UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                    CASE NO. 8:25-cr-425-MSS-LSG

JESUS EDUARDO TORRES TORRES

### UNITED STATES' SENTENCING MEMORANDUM

The Court should sentence the defendant, Jesus Eduardo Torres Torres, to a low-end guideline sentence of 108 months of imprisonment.   In support thereof, the United States provides the following:

### Factual Background

The defendant conspired to distribute approximately 2,914 kilograms of cocaine. According to the factual basis filed in this case in connection with the defendant's guilty plea, Doc. 81, the following are the facts in this case:

On or about August 18, 2025, a maritime patrol aircraft (MPA) sighted a go-fast vessel (GFV) in the international waters of the Caribbean Sea, approximately 130 nautical miles south of Jamaica (international waters). The MPA crew observed the GFV in a known drug trafficking area with three outboard engines and packages on deck.

The United States Navy Ship (USS) MINNEAPOLIS-SAINT PAUL was patrolling nearby with a Coast Guard law enforcement team onboard. The MPA crew observed four persons onboard the GFV jettison approximately 30 packages into the water. The USS MINNEAPOLIS-SAINT PAUL launched a small boat

with a Coast Guard boarding team to intercept the GFV. The boarding team obtained positive control of the GFV without any use of force, approximately 300 yards from where the GFV jettisoned the packages. This entire interaction occurred in international waters.

The Coast Guard then conducted a right of visit (ROV) boarding observing four people onboard. A master was identified, but they did not make a claim of nationality for the vessel. The defendant, Jesus Eduardo Torres Torres, and his three co-defendants in this case were identified as the four crewmembers on the GFV.

Therefore, in accordance with 46 U.S.C. §§ 70502(c)(1)(A) and 70502(d)(1)(B), the U.S. Coast Guard treated the GFV as a vessel without nationality and therefore a vessel subject to the jurisdiction of the United States. At the time of interdiction by the Coast Guard, the GFV was seaward of the territorial seas of any nation and in international waters.

The Coast Guard recovered 40 jettisoned bales and located an additional 54 bales onboard the GFV. The Coast Guard performed two IONSCAN tests on the packages onboard the GFV, both testing positive for cocaine. The Coast Guard recovered a total of 94 bales of suspected cocaine. The contraband had an at-sea weight of approximately 2,914 kilograms.

The defendant, Jesus Eduardo Torres Torres, willingly agreed to transport cocaine aboard the GFV with his codefendants and others. The purpose of this agreement was to smuggle this cocaine through international waters and distribute the cocaine to other persons. The defendant knew the packages onboard

the GFV contained five or more kilograms of cocaine and knew that the planned

voyage was a drug smuggling venture.

### Procedural Background

On September 2, 2025, the grand jury returned a two-count indictment against

the defendants. Doc. 29.   One count of the indictment charged the defendants with

conspiring to distribute, and possess with the intent to distribute, five kilograms or

more of a mixture and substance containing a detectable amount of cocaine. *Id*. The

indictment also charged the defendants with possessing with the intent to distribute

five kilograms or more of a mixture and substance containing a detectable amount of

cocaine. *Id.*

On January 9, 2026, defendant Jesus Eduardo Torres Torres pleaded guilty to

Counts One and Two of the Indictment before United States Magistrate Lindsay S.

Griffin. Doc. 91.   The Court adjudicated the defendant guilty, and the defendant's

sentencing was initially scheduled for May 26, 2026. Doc. 106.   On May 12, 2026,

the defendant's motion to continue the sentencing was granted and reset the

sentencing for July 7, 2026. Docs. 123, 125, 126.   On June 12, 2026, the defendant

filed an unopposed motion to continue/reschedule the sentencing to accommodate

defense counsel's scheduled vacation.   Doc. 140.

In the final presentence investigation report (PSR), the United States

Probation Office has calculated the defendant's applicable guideline range of

imprisonment for the underlying offense as 108-135 months based on a total offense

3

level of 31 and a criminal history category of I under the United States Sentencing Guidelines. PSR at ¶ 51.   The United States does not object to that calculation.

<strong><u>Minimal Role</u></strong>

The defendant argues a minimal role reduction applies. The United States opposes any role reduction for the defendant because the defendant performed a critical role in transporting a trafficking amount of cocaine over hundreds of miles on the open ocean from its source in South America to consumers abroad and is being held accountable only for the conduct in which he personally participated.

A defendant is not entitled to a role reduction unless the defendant shows that he was a minimal or minor participant in the offense. See USSG §3B1.2. The defendant bears the burden of establishing his entitlement to such adjustment by a preponderance of the evidence. *United States v. De Varon*, 175 F.3d 930, 939 (11th Cir. 1999).

The extent and nature of the defendant's role in the relevant conduct is the "foremost" factor in determining whether the defendant performed a minor or minimal role. *De Varon,* 175 F.3d at 940. Where, as here, the defendant cannot "establish that [he] played a relatively minor-role" in the crime of conviction, and not a relatively "minor role in any larger criminal conspiracy," the defendant should be denied a minor-role reduction. *Id*. at 944.

Before recent amendments to the Sentencing Guidelines, *De Varon* also permitted a court to "measure the defendant's conduct against that of other

4

participants in the criminal scheme attributed to the defendant." 175 F.3d at 934. This prong involved a defendant "show[ing] that he was substantially less culpable than the other participants in the conspiracy." *United States v. Reyes*, 279 F. App'x 802, 805 (11th Cir. 2008).

But the Sentencing Guidelines, as of November 1, 2025, state that a mitigating role adjustment shall apply in drug trafficking cases "regardless of whether the defendant was substantially less culpable than the average participant in the criminal activity." § 2D1.1(e)(2)(B). In essence, this instruction eliminates the second prong of *De Varon* in drug trafficking cases. See *United States v. Brown*, 332 F.3d 1341, 1345 n.6 (11th Cir. 2003) (recognizing that an amendment to the Sentencing Guidelines only abrogated Eleventh Circuit precedent "to the extent that" it affected the holding's definition of "underlying offense"); *United States v. Duncan*, 400 F.3d 1297, 1305 (11th Cir. 2005) (explaining that the unaffected holdings of a partially abrogated decision remain binding under the prior-panel-precedent rule). Equally important, then, is that the Sentencing Guidelines left the first-prong analysis in *De Varon* untouched. *De Varon's* first (and mandatory) factor thus continues to provide the framework for the Court's analysis.

The Sentencing Guidelines provide a non-exhaustive list of factors for courts to analyze under that framework:

(i) the degree to which the defendant understood the scope and structure of the criminal activity;

5

(ii) the degree to which the defendant participated in planning or organizing the criminal activity;

(iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; and

(v) the degree to which the defendant stood to benefit from the criminal activity.

§3B1.2 cmt. 3(c).

The revised Guidelines offer a few examples for when a court could reduce a sentence under § 3B1.2(a) in a drug trafficking case. They state that such a reduction is "generally warranted" when the defendant's responsibility primarily resulted from either performing a task "plainly among the lowest level of drug trafficking functions" or "performing another low-level trafficking function, such as distributing controlled substances in user-level quantities for little or no monetary compensation." § 2D1.1(e)(2)(B).

Those factors and examples demonstrate that this defendant is not eligible for a role reduction here because he did not perform a low-level drug trafficking function.   First, the defendant understood the scope and structure of the criminal activity. See §3B1.2 cmt. 3(c)(i).   He knew the task at hand was to navigate a trafficking amount of cocaine across the high seas, so that it could be smuggled into

foreign countries. The defendant was one of four people on a go-fast vessel laden with 2,914 kilograms of cocaine. That vessel—with the support of its crew—embarked on a transnational voyage on the open ocean. It traveled hundreds of miles over a period of days or even weeks.

Second, the defendant was entrusted to help navigate that drug-laden vessel with minimal supervision. See §3B1.2 cmt. 3(c)(ii)-(iv) (providing that the "nature and extent" of the defendant's responsibilities are factors in analyzing whether he played a minor role); *De Varon*, 175 F.3d at 944.   On a small vessel, each mariner takes significant responsibility in continuing to operate the vessel, even if the mariner is not the captain; in short, there are no bystanders on a smuggling vessel just along for the ride. For example, in *Mendez*, the Eleventh Circuit affirmed that a defendant was not entitled to a minor role reduction where the defendant "merely drove the boat" containing drugs, whereas his codefendants were, respectively, the captain and owners of the drugs. *United States v. Mendez*, No. 22-11601, 2025 WL 2732015, at *5 (11th Cir. Sept. 25, 2025). See *United States v. Monzo*, 852 F.3d 1343, 1347 (11th Cir. 2017) (considering, as part of the totality of the circumstances, that the defendant "participated in the distribution of high-purity [drugs], ... that he was responsible only for his direct role in the conspiracy, and that he was important to the scheme"). See also, *United States v. Hernandez Osorio*, et. al. No. 23-12337, 2026 WL 278481 (11th Cir. Feb. 3, 2026). Under the second prong, the Court need only compare the defendant's role to that of the other participants involved in the relevant conduct attributed to the defendant. Like the defendant in *Mendez*, this defendant's

participation in driving a drug-smuggling boat across the sea suffices to show that he performed more than a minor or minimal role.

Furthermore, the defendant did not have a minimal role because his actual conduct was coextensive with the relevant conduct. See *United States v. Alvarado-Forbes*, 247 F. App'x 203, 204 (11th Cir. 2007) (stating "the substantial amount of cocaine on the vessel was a material consideration" for denying minimal participant or minor role); see also *United States v. Cruickshank*, 837 F.3d 1182, 1195 (11th Cir. 2016) (reaffirming that the amount of drugs transported is a significant consideration in minor role analysis, but explaining that it may not be the only factor the court considers); *United States v. Alarcon*, 194 F. App'x 727, 731 (11th Cir. 2006) (holding that defendant who "conspir[ed] to import two kilograms of heroin" and "admitted [that] he had personally transported that amount into the country" was not eligible for a minor role). It defies precedent and logic that a defendant entrusted with cocaine having a wholesale value of millions of dollars and transporting the same across a broad expanse of ocean to another continent is held to the functional equivalent of a person transporting smaller amounts of narcotics at a fraction of the distance.

The new Guidelines keep intact the rule that a defendant cannot redefine the scope of "the criminal activity" by invoking the vast, multinational drug-trafficking enterprise that inevitably surrounds the maritime transportation of narcotics. Compare § 2D1.1(e)(2)(B), with *De Varon*, 175 F.3d at 944. The minor or minimal role inquiry remains anchored in the defendant's relevant conduct, not the abstract

8

hierarchy of a transnational cartel.   *De Varon*, 175 F.3d at 944 (warning that a defendant "may not establish that he played a relatively minor role by pointing to a broader conspiracy in which he was a small player"). That principle remains unassailable in the Eleventh Circuit's maritime drug-trafficking cases. See, e.g., *Cabezas-Montano*, 949 F.3d at 607 (holding that crewmembers who moved a large quantity of high-purity cocaine through internationals waters played a serious and important role inconsistent with minor-role relief); *United States v. Gruezo*, 66 F.4th 1284, 1294 (11th Cir. 2023) (holding that the defendant's involvement as a crewmember of a vessel smuggling offenses, and protect the public).   *See* 18 U.S.C. § 3553.   Thus, a low-end guidelines sentence will serve Section 3553's various interests.

## CONCLUSION

For the reasons set forth above, the Court should sentence the defendant to a low-end guidelines sentence of 108 months.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

By:    */s/Joseph K. Ruddy*
Joseph K. Ruddy
Assistant United States Attorney
USAO No. 037
400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: joseph.ruddy@usdoj.gov

**U.S. v. Jesus Eduardo Torres Torres    Case No.: 8:25-cr-425-MSS-LSG**

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Defense counsel of record.

*s/Joseph K. Ruddy*
Joseph K. Ruddy
Assistant United States Attorney
USAO No. 037
400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: joseph.ruddy@usdoj.gov